

**FILED**

SEP 3 0 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# In the United States district court

# for the Eastern District of California

No. 2:09 cv 446    LKK CmK (PS)

## COMPLAINT FOR DAMAGES

### Jury trial demanded

**Lillian Simonis, ~~Hannah Moore~~ and Laura Lovett**

Plaintiffs

vs

**Eric Magrini, ~~Gary Flick~~, ~~Tammy Thomas~~**

~~and Randy Foster~~

Defendants

**SHASTA COUNTY CALIFORNIA**

real party in interest

---

Submitted by:

Lillian Simonis
Hannah Moore
and
Laura Lovett
pro per and pro se.
P. O. Box 993658
Redding CA 96099

1

## JURISDICTION

This court has jurisdiction pursuant to 28 USC §1331 to hear this cause of action arising from a violation of the Federal Constitution.[Bivens]

## PARTIES

**Lillian Simonis,** Plaintiff, now adult, a minor at the time of the injuries complained of in this complaint.

**Hannah Moore,** Plaintiff, now adult, a minor at the time of the injuries complained of in this complaint.

**Laura Lovett,** Plaintiff, a minor, suing in her own capacity with the advice and consent of her parents.

**Shasta County California,** real party in interest, a geographic and political subdivision of California is employer of, and surety for, the named defendants.

Defendant **Eric Magrini,** male, is and was at all times pertinent to this suit, employed by Shasta county in the Sheriff's Department to carry out the policies of the Shasta Co. Sheriff, Tom Bosenko.

Defendant **Larry Fitch,** male, is and was at all times pertinent to this suit, employed by Shasta county in the Sherif's Department to carry out the policies of the Shasta County Sheriff, Tom Bosenko.

Defendant **Teresa Clemens,** purportedly female, is and was at all times pertinent to this suit, employed by Shasta county in

2

the Sheriff's Department to carry out the policies of the Shasta
County Sheriff, Tom Bosenko.

Defendant **Pamela De Pui**, purportedly female, is and was at
all times pertinent to this suit, employed by Shasta county in
the Sherif's Department to carry out the policies of the Shasta
County Sheriff, Tom Bosenko.

### SUMMARY

This is a classic case of rape in the archaic sense as
defined in the 7th edition of Black's Law dictionary on page
1267; "**Rape**. 3. *Archaic*. The act of seizing and carrying off a
person (esp. a woman) by force; abduction. 4. The act of
plundering or despoiling a place."

On April 22nd, 2008, the above named defendants, in uniform
and carrying out the policies of Shasta County Sheriff Tom
Bosenko, clandestinely entered a private home without warrant or
cause at approximately 11:30 PM. All in the house were sleeping.
The entry was made without arousing anyone.

While searching with flashlight and guns drawn, a member of
the household was awakened and was assaulted by a deputy with a
light that blinded him to his surroundings and illuminating the
gun inches from his face. He was handcuffed and placed on the
couch.

Plaintiff Simonis and Lovett were awakened by the commotion,
and thinking they were being burglarized and robbed, attacked one

3

of the robbers.

The lights were turned on and the Plaintiffs were forcefully separated from the person they attacked by others present.

All Plaintiffs were handcuffed. Moore was placed on the couch. Simonis and Lovett were laid on the floor. For the next hour or so Plaintiffs were terrorized with extreme physical and mental abuse and personal insults.

Being told of the severe brain trauma recently suffered by Simonis seemed to heighten the enjoyment of the intruder slamming Simonis' head against the floor. The other deputies looked on but refused to interfere.

Lovett's feet were bound together with plastic ties and then to her hand cuffs. The three victims were, then and there, kidnaped, taken from the house and placed into cars and transported to another place in the county, Juvenile Hall. (See The California Penal code definition of kidnaping, infra).

While thus kidnaped, in Juvenile Hall Plaintiffs were further interrogated and threatened and taunted by other employees of Shasta county carrying out the policy of Sheriff Tom Bosenko.

Plaintiffs Simonis and Lovett were taken to Shasta Regional Medical Center for examination and to be 'cleared' for jail. (See attached medical report). The reports alludes to things that constitute physical abuse at the hands of their captors but no report of the abuse was made by the hospital. Plaintiffs were

4

released back to their captors.

Plaintiff Moore was taken, by her captors, to her home without being allowed to retrieve her automobile from the house where she was kidnaped. Plaintiff Simonis was released from captivity at Juvenile hall. Plaintiff Lovett was held for two more days and then released by her captors to her parents.

Documents of this policy enforcement incident were requested from the Shasta Co. Sheriff's Department, but were refused in a letter from the county Attorney indicating that no such documents exist.

### IN SUM

Apparently no documents of this incident were created and none of the employees of Shasta Co. were arrested or charged with any crimes in connection with this terrorist activity, thus indicating the policy of Sheriff Tom Bosenko is to permit, encourage, foster and provide facilities for terrorist activities where the victims are kidnaped, falsely imprisoned, physically, mentally and medically abused and then released to be captured again at some later date by anyone with a badge.

This case is remarkably similar to an incident many years ago involving the 'Manson Family'. The major differences are that here, these captors are county government employees carrying out the Sheriff's policy, and the victims were left alive. Released to be captured and tortured in the future with the sure

and certain knowledge that they have no protection of the law and that they are absolutely owned by, and subject to the will of Sheriff Tom Bosenko or anyone in his favor.

## THE LAW

**1. Fourth Amendment to the Federal Constitution.** The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the placed to be searched, and the person or thing to be seized.

## 2. California Penal Code Section 207(a): Kidnaping.

(E)very person who forcibly, or by any other means of instilling fear, steals, or takes, or holds...any person in this state, and carries the person into...another part of the same county, is guilty of kidnaping.

## CLAIM

**Plaintiffs allege**, that employees of Shasta County, vi et armis, did;

1. Unlawfully search the house they were sleeping in and did unlawfully seize them.

2. Kidnap them from that house and carry them off to another part of the county.

3. Torture and falsely imprisoned them, using government facilities while carrying out the policies of Shasta Co. Sheriff,

6

Tom Bossenko.

All in violation of the law and to the detriment and injury, both substantial and financial, of Plaintiffs.

## AT ISSUE

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures...

## FACTS

1. Late at night, on April 22nd, 2008, four employees of the Shasta Co. Sheriff's department entered a house at 8742 Silver Bridge Road in Palo Cedro, Shasta Co., California, without warrant or cause.

2. They entered the house in such a manner that the occupants of the house was not aroused from their sleep.

3. Their search of the house awoke one of the occupants, which was immediately seized.

4. That seizure awoke Plaintiffs which, in the dark, attacked one of the intruders.

5. Lights were turned on and the Plaintiffs were forcefully separated from the intruder they were attacking, they were seized and brutalized by the intruders.

6. For approximately an hour Plaintiffs were subjected to various taunts, torture and insults while other intruders searched the house.

7. Plaintiff Simonis, who recently under went a severe head

7

trauma, had her head repeatedly banged against the floor in spite of the loud vocal protests of the other Plaintiffs.

8.  No one interfered with this torture or came to her aid and the other plaintiffs were not allowed to aid or comfort their friend.

9.  Plaintiff Lovett, in addition to being handcuffed behind her back and placed on the floor, had her feet bound with plastic ties and that binding was tied to her handcuffs drawing her feet up close to her handcuffs inflicting severe pain.

10. Plaintiff Lovett was left on the floor in this position, and thus bound, was later carried from the house by two of the intruders.

11. The Plaintiffs were taken by force from the house and placed into cars used by the intruders and carried off to Juvenile Hall, another place under the control of Sheriff Tom Bosenko.

12. In route to Juvenile Hall the kidnapers drove at dangerously high speed until Plaintiffs expressed their fear.

13. At Juvenile Hall Plaintiffs Simonis and Lovett were 'booked' in and placed into separate cells.

14. Plaintiff Moore was not 'booked' but was held outside of Juvenile Hall by two of the kidnapers while the other two Plaintiffs were booked, then Plaintiff Moore was taken to her home without being allowed to retrieve her private car from the place of her kidnaping.

8

15. Plaintiffs Simonis and Lovett were interrogated and placed in separate unheated cells and visited several times by their captors with threats, and with degrading and humiliating taunts concerning their imprisonment.

16. Plaintiffs Simonis and Lovett were taken to Shasta Regional Medical Center for examination to 'clear' them for jail, where Plaintiff Simonis informed the examining attendant of her recent head trauma and complained of severe ear pain.  The attendant did not act on this information.

17. The Shasta Regional Medical Center did not notify the parents of the two underage females they examined.  They returned them to their captors and made an incomplete record of the examination in the hospital records omitting the statement of the severe head trauma and current acute pain.

18. Plaintiffs Simonis and Lovett were returned to Juvenile Hall where Plaintiff Simonis was released and Plaintiff Lovett was held for two more days, then released.

19. Plaintiffs, their families, friends and relatives have made numerous requests for the documents of this incident to no avail.

20. At no time during this incident was there a warrant served upon Plaintiffs or even a mention of one during the capture, carrying off, imprisonment or interrogation of Plaintiffs.

21. None of the parents of the underage plaintiffs were

9

notified of their seizure, kidnap or medical examination, and no citations were issued, no booking sheets were furnished to Plaintiffs and no complaints were filed against them.

22. These facts are substantiated by the attached exhibits; Exhibit A, the affidavits of Plaintiffs and other witnesses; pages A-1 through A-7.

Exhibit B, Hospital Reports Pages B-1 through B-3.

### EXHIBITS A

Affidavit of Lillian Simonis

Affidavit of Hannah Moore

Affidavit of Laura Lovett

Affidavit of Melinda Simonis

### EXHIBITS B

Medical report of examination of Lillian Simonis

Medical report of examination of Laura Lovett

Attached hereto and made a part hereof as if fully set forth herein.

We declare under the penalty of perjury the foregoing is true, correct and certain to the best of our knowledge. This declaration executed this 27th day of August , 2008.

_Lillian Simonis_
Lillian Simonis, seal.

_Hannah Moore_
Hannah Moore, seal.

_Laura Lovett_
Laura Lovett, seal.

As the parents of Plaintiff Laura Lovett, our minor daughter, this action is taken with our full knowledge and has our complete approval and support.

Carl D. Lovett, seal.
Father

Conseption Lovett, seal.
Mother

10

## RELIEF DEMANDED

**The payment of money damages** from Shasta County to Plaintiffs for the unlawful search of the house in which plaintiffs were sleeping, and for the unlawful seizure of Plaintiffs, Shasta county is to pay;

**To Plaintiff Lillian Simonis,** gold coins of the United States with the total face value of **$1,000,000.00 (One Million)Dollars.**

**To Plaintiff Hannah Moore,** gold coins of the United States with the total face value of **$1,000,000.00 (One Million) Dollars.**

**To Plaintiff Laura Lovett,** gold coins of the United States with the total face value of **$1,000,000.00 (One Million) Dollars.**

## ADDITIONALLY

**The payment of money damages from Shasta County** to Plaintiffs for the kidnaping and torture of Plaintiffs, Shasta county is to pay;

**To Plaintiff Lillian Simonis,** gold coins of the United States with the total face value of **$1,000,000.00 (One Million)Dollars.**

**To Plaintiff Hannah Moore,** gold coins of the United States with the total face value of **$1,000,000.00 (One Million) Dollars.**

**To Plaintiff Laura Lovett,** gold coins of the United States with the total face value of **$1,000,000.00 (One Million) Dollars.**

11

**Total damages to be paid to each Plaintiff by Shasta Co. in gold coins of the United States is $2,000,000.00 Two Million Dollars, face value.**

**All damages to be paid to the clerk of court,** by Shasta Co. for delivery to Plaintiffs or their assigned agent or agents as they direct.

Dated this 27th day of _august_ , 2008.

Lillian Simonis, seal.            Hannah Moore, seal.

Laura Lovett, seal.

12



# SHASTA COUNTY

# Office of the Sheriff



**Tom Bosenko**
**Sheriff-Coroner**

## CITIZEN COMPLAINT FORM

The Shasta Cor Sheriff's Office complaint process is designed to provide citizens the opportunity to bring forward icerns regarding operations of the Sheriff's Office or actions of its personnel to the attention of .inistration.  An administrative investigation of the allegation will be conducted to clarify issue  the complainant and if appropriate, hold members of the Sheriff's Office accountable.

Just as the mplaint process is designed to satisfy the concerns of the citizens, it is also designed to clear Sh's Office employees of allegations or wrongdoing falsely or mistakenly filed against them. In cases re a false complaint is maliciously filed against a peace officer, that officer is entitled to file a civil n for defamation of character in accordance with Civil Code Section 47.5.  Therefore, it is impo all allegations presented in a complaint to the Sheriff's Office be based on factual information.

---

{AVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY OPER POLICE CONDUCT.  CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A CEDURE TO INVESTIGATE CITIZEN'S COMPLAINTS.  YOU HAVE A RIGHT TO A .ITTEN DESCRIPTION OF THIS PROCEDURE.  THIS AGENCY MAY FIND AFTER THE VESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON OUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY.  CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

I have read and understand the above statement.

COMPLAINANTS _Laura Forst_       DATE _8/27/08_

_Hannah Moore_            _8/27/08_

_Jillian Amorals_           _8·27·08_

### exhibit A-1

To:     Tom Bosenko:
        Sheriff, Shasta county California.

## SUMMARY OF CITIZEN'S COMPLAINT

On April 22nd of this year, at about 11: 30 PM, while carrying out your policy,  four employees of the Sheriff's department, Sgt. Eric Magrini badge # 260, Larry Fitch #267, Pamela De Pui #182, and Teresa Clemens #137 entered a house at 8742 Silver Bridge Road in Palo Cedro, using flashlights and with guns drawn.  The four 'deputies' had no warrant of the law nor probable cause.

The occupants of the house were sleeping at the time of their entry.  One occupant, Cody Engh, was woke and  immediately seized, handcuffed and placed on a couch.  In one of the bedrooms, three 17 year old girls were awakened by the commotion and, thinking they were being robbed, attacked one intruder in the dark.  The girls were dragged off of the intruder and into the light of the living room where all of them were handcuffed.  Hannah Moore was placed on the couch with the first victim.  Lillian Simonis and Laura Lovett were laid on the floor.  Thus bound, they were then and there brutalized with torture, taunts, threats and insults.  Simonis, who was recovering from a severe head injury and still under medical care, had her head banged against the floor repeatedly.  The warning of the other girls did nothing but encourage the intruder banging Simonis' head against the floor.  Other 'deputies' looked on and did nothing to stop the torture to Simonis and the other victims were not allowed to aid or comfort their friend.  Lovett had her feet tied with plastic ties and then that binding tied to the handcuffs, bringing her feet up to her handcuffs.  She was later carried from the house bound in this manner.

While this was going on, one of the 'deputies' carrying out your policy, searched the house including the girls' purses, and came up with their identifications.  The three girls were taken from the house and placed in the cars of the 'deputies.'  Moore was placed in the car with the females and Simonis and Lovett were placed in the car with the two males.  The male victim, Cody Engh, was ordered to leave his house or be taken to jail.  The girls were taken to Juvenile Hall where Simonis and Lovett were booked and placed in separate cells.  Moore was held outside by the two females and later taken to her home without being allowed to recover her private automobile from the house from which she was kidnaped.

Victims Simonis and Lovett were transported to Redding Medical Center to be examined and  'cleared' for jail.  A report of this examination was sent to victims Simonis and Lovett.  Their parents were not notified of the medical procedure performed on the two girls.

After the examination the two victims were returned to their captors.  They were taken back to Juvenile Hall where Simonis was released and Lovett was kept for two more days.  No charges were brought against any of the girls.

The victims, their friends and families have made numerous attempts to obtain the records of this incident with no success.  Correspondences indicate there were no records of this incident.

Lillian Simonis, seal.        Hannah Moore, seal.

Laura Lovett, seal.

## AFFIDAVIT OF LILLIAN SIMONIS

I, **Lillian Simonis**, the Affiant, do hereby swear, declare and depose: that I am competent to state the matters set forth herein; that I have personal knowledge of the facts stated herein; that all the facts stated herein are true, correct and certain, admissible as evidence, and if called upon as a witness I will testify to their veracity:

### AWAKENED, ABUSED, AND SEIZED BY FORCE

1. On April 22, 2008, approximately 11:30 P.M., I, **Lillian Simonis**, was sleeping in a bedroom of a private residence located at 8742 Silverbridge Road, Palo Cedro, Ca. 96073.

2. My girlfriends, **Laura Lovett (Laura)** and **Hannah Moore (Hannah)** were with me.

3. I was awoke in confusion and fear by unknown voices and a bright flash light.

4. At that moment, I feared for my life, I lunged at a unknown person holding the flashlight(now identified to me as; Shasta County Sheriff's deputy **De Pui (De Pui)**.

5. I was immediately tackled from behind and dragged.

6. There were several people on top of me, crushing my head and then my back and they forced my arms backwards and handcuffed me.

7. It was then I realized these people were cops, but I did not know what was going on or why they were there.

8. They Handcuffed me face down on the floor, I was trying to tell them I had a head injury. I was yelling, "you hurt my head, don't hurt my head, I have a head injury ".

9. An adult male (now identified to me as; Shasta County Sheriff's deputy **Finch (Finch)**) slammed my head into the floor and pulled my hair out when I attempted to get up.

10. **De Pui** did allowed me to sit up and I apologized for lunging at her and explained I did not know who she was.

12. I asked them, "how did you get in here", and **Finch** said, "shut your fucking mouth."

13. A large adult female (now identified to me as; Shasta County Sheriff's deputy **Tonya Clemens (Clemens)**) had taken our phone numbers.

Exhibit A-2

14. **Clemens** stepped behind **Laura** handcuffed her and slammed her down on the floor beside me, telling **Laura** she lied about her phone number and was being arrested for lying.

15. When **Laura** and I lay handcuffed on the floor, we watched an adult male (now identified as Shasta County Sheriff's deputy, **Eric Magrini (Magrini)**) search the rooms in the house.

16. **Magrini** searched our purses and remove our drivers licences, from our wallets.

17. From what I remember, **Cody Engh (Cody)**, who lives there, was handcuffed on the couch and he was quiet.

18. **Tory Tyree (Tory)** was also on the couch and was quiet.

19. **Cody**, 20 yrs. old, and **Tory** 18 yrs. old, were threatened they could be charged with statutory rape if they had made sexual contact with a minor.

20. Afterwards **Cody** and **Tory** were ordered to leave the property or they would be arrested for trespassing.

## SHERIFF'S VEHICLE

1. I was forced out of the house and into the back seat of a sheriff's vehicle, where I was alone for about 10 minutes, then **Laura** was carried out of the house, feet untied, and put into the car.

2. We started yelling "let us out, we want to go home." **Magrini** opened **Laura**'s door and put her in another sheriff's vehicle.

3. **Finch** opened my door and threatening to spray me in the face with his can of pepper spray holding it inches from my face.

4. Just then, my aunt drove up and told the deputies she was there to pick up **Lillian Simonis** and told them about my head injury.

5. My aunt came to the vehicle and I told her what had happened, and that my head was hurting really bad, **Finch** shut the door and said "we'll be on our way now."

6. My aunt argued with them, that I should be released to her care because of my head injury, but **Finch** said, "were not concerned with that." and he told my aunt to leave.

7. **Laura** was forced back into the vehicle with me and the two
adult males **(Finch** and **Magrini)**got into the front seat.

8. I witnessed the speedometer over 85 MPH, and I told **Finch,**
"slow down, you have our lives in your hand."

### SEIZED, TRANSPORTED & IMPRISONED

1. We were taken to the Juvenile Hall and told BY **Magrini,**to blow
into a breathalyzer.

2. I told **Magrini,** "I don't have to unless my parent or guardian
is advised."

3. **Magrini** told me, " as a minor we can do what we want to you,
if you do not cooperate you will be taken to the hospital and
forced to do a blood test and be catharized."

4.**Magrini** had hurt Laura at the house, and was now threatening
me, the both of us were scared and blew into the breathalyzer
several times.

5. Around 2:00 A.M. April 23, still handcuffed, **Laura** and I were
take to Mercy hospital where we were briefly examined. I
complained of my head aching and throbbing pain in my right ear.
I told the nurse about my recent traumatic head injury and how I
had been in the intensive care unit in Redding Medical Center.

6. I reported to the doctor that the deputies had ripped my hair
out and slammed my head over and over. The next day handfuls of
my hair had been pulled out.

7. Laura and I were taken back to Juvenile hall, where the
handcuffs were removed and my wrists had cuts and were very
swollen.

8. We were told to shower, inventory our belongings and were
given clothes to wear, then isloated from each other in a small,
cold cell.

9.  Shasta County's Juvenile Probation officer **Kubitch** came into
my cell and questioned me until I was huddled into the corner
because he seamed intimidating.

10. I was released late that afternoon to my aunt.

CONTACTED BY SHASTA COUNTY'S
SHERIFF DEPT. & JUVENILE PROBATION DEPT.

1. On April 24, 2008, Shasta County Sheriff's Sergeant **Mark Lillibridge (Lillibridge)** left two messages on my cell phone at approximately 4:20 p.m., and 5:30 p.m. requesting **Laura, Hannah,** and **I** to meet him at his office to sign some paperwork he had prepared.

2. On April 25, 2008, at 3 p.m **Laura, Hannah** and **I** met **Sergeant Lillibridge,** at the Shasta County Sheriff's office in Shasta Lake City, where he escorted us to a mobile office.

3. He said to us, "the deputies were in the wrong out there."

4. He told us the deputies had gone to the house that night, based upon a phone call made by **Erica Patton (Erica)**.

5. **Lillibridge** encouraged us to file a complaint and a restraining order against the girl, he alleged called in and gave false information to police on April 22, 2008.

6. I did not feel it necessary to file anything against **Erica**.

7. I ask **Lillibridge,** "How the deputies got into the house that night?", and he did not answer.

8. On May 15th, at approximately 3:30 p.m. my aunt and I met with Shasta County Juvenile Probation Officer, **Creighton Darling (Darling)** at the Probation Department Center.

9. **Darling** told my aunt and I, "the case is closed after investigation," and  "there is going to be no charges filed against you, **(Lillian Simonis)** or the other two girls."

HISTORY OF SKULL FRACTURE & TRAUMATIC BRAIN INJURY

1. February 18, 2008, I was in a serious accident.

2. On February 23, I woke up in I.C.U. in Mercy Medical Center suffering from right temporal bone fracture, traumatic brain injury and skull fracture.

3. Since then, I have been under the care of neurosurgeon, **Dr. Ashok Jain.**

'4. **Dr. Jain** instructed me to protect my head, stay quiet, no excitement or stimulation to the brain, no watching television or even reading.

5. I received a cat-scan Tuesday, April 29, 2008 and the scan showed a large dark area that was not in the previous scans.

6. It was on the right side of my head, where the deputies had pulled my hair out and banged my head on the floor.

7. My doctor was very concerned when he saw the cat-scan.

### DECLARATION

I, Lillian Simonis, declare under penalty of perjury under the laws of the State of California the foregoing is true and correct to the best of my knowledge. This declaration executed June 11, 2008, Redding, California.

Lillian Simonis,    Seal.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _SHASTA_

On _6/11/08_ before me, _M. Darlyne Nachtman, Notary_
　　　Date　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Lillian Simonis_
　　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _M. Darlyne Nachtman_
　　　　　　　Signature of Notary Public

Place Notary Seal Above

```
M. DARLYNE NACHTMAN
COMM. NO. 1776326
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMM. EXP. NOV. 14, 2011
```

─────────── **OPTIONAL** ───────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _AFFIDAVIT OF Lillian Simonis_

Document Date: _6/11/08_　　　　　　　　　Number of Pages: _5_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Laura Lovett
1920 Trumpet Driv
Redding, CA 9600

### AFFIDAVIT OF
### Laura Lovett

1. On April 5 2008 , I, **Laura Lovett**,  spent the night at a friend's private home, located at 8742 Silver dge Road, Palo Cedro, CA.

2. Some e around 11:30 P.M., I was awaken by loud voices and flashlights in the hallway. I was co ed as to how someone came into the house because **Lillian Simonis** and I had locked the dc before going to bed.

3. I member being ordered to come out of the bedroom.

as so terrified,  I didn't realized that they were cops until I was ordered to sit down on the h.

**Cody Engh**, who had earlier been sleeping in his room, was handcuffed and seated on the ouch.

6. I witnessed a male deputy put his knee into the back of **Lillian Simonis'** head pushing her face into the floor and the biggest female deputy, pin **Lillian** on the floor, and they handcuffed her.

7. The biggest female deputy took a hold of **Lillian's** hair pounded her head on the floor, over and over, while the male deputy put his boot in **Lillian's** back, holding her down.

8. It freaked me out, seeing this and  I yelled at them, "**Lill's** head has been hurt, Stop pulling her hair".  I repeated that, over and over again.

9. **Lillian** was screaming.

10. **I** was afraid, **I** have been with **Lillian** daily, since her head injury and hospitalization.

11. **Hannah Moore** also shouted at the deputies to stop hurting **Lillian's** head.

12. The biggest female deputy ask for our home phone numbers and **I** gave it to her .

13. She claimed the number was disconnected, she handcuffed me and slammed me on the floor, saying, "Your under arrest for lying."

Exhibit-1- A - 3

14. I laid on the floor, handcuffed,  beside **Lillian** for probably a half hour and watched a male deputy search the kitchen, garage and the bedrooms.

15. He came from the bedroom with all three of us girl's ID in his hand, so he went through our purses, and removed our ID's from inside our wallets.

16. He announced, **Lillian Simonis** and **Laura Lovett** are going to Juvenile Hall and **Hannah Moore** will be taken home.

17. Two male deputies tied my feet together to my hands as I lay face down on the floor.

18. They took **Lillian** out the front door and away from me, as I lay there for more than 15 minutes.

19. The two male deputies picked me up from behind, one by my feet the other by my hands and literally carried me outside.

20. They put me on the ground and untied my feet before putting me into the backseat with **Lillian.**

21. A few minutes later I was forced to get into the backseat of the other sheriff's vehicle.

22. **Lillian**'s aunt, arrived and wanted to pick her up but the deputies would not let **Lillian** go with her aunt.

23. **Lillian's** aunt got to talk to her with the car door open but only for a minute.

24. I was forced to get back into the first vehicle with **Lillian** and the two male deputies drove us to Juvenile Hall (JH).

25. **Lillian** told them to slow down because the driver was doing 85MPH and he did.

26. We were booked at JH and told to blow into a breathalyser.

27. **Lillian** said that we are minors and we do not have to answer, nor blow a breathalyser until our parents are contacted.

28. A male deputy told us, "that as minors, we can do whatever we want to you," and  "If you refuse to cooperate he will take us to a hospital for tests."

29. I blew into the breathalyser.

30. Still handcuffed, around 1:30 A.M. April 23,  **Lillian** and I were take to Redding Medical Center.

31. **Lillian** reported her previous injury and having her hair pulled and head hurt by the deputies and that her head was aching and her right ear was throbbing.

32. One nurse tried to examine **Lillian's** ear but **Lillian** couldn't handle the pain and the nurse stopped.

33. **I** reported being abused by the deputies.

34. We sat side by side on an exam table with the two male deputies standing right behind us.

35. After a superficial examination we were released from the hospital to the male deputies.

36. **Lillian** and **I** were handcuffed by the male deputies and transported back to Juvenile hall.

37. A female ask us if we wanted a shower.

38. She removed the handcuffs and we complied with everything she told us to do.

39. After that **I** was separated from **Lillian** and put into a small cold cell by myself.

40. The next day was humiliated and threatened by a probation officer named Kubich.

41. Kubich twice threatened, I was going to be imprisoned there for 6 month to two years for assault charges.

42. In one of his 'visits' to my room, he ask me what my plans were.

43. I told him I planned to go to college.

44. He replied, "They don't offer college courses in jail."

45. I was released in the evening of April 24, 2008.

46. On April 25th at 3 p.m. **Hannah Moore, Lillian Simonis**, and myself met with **Srgt. Lillibridge** in Shasta Lake City, at his request.

47. He stated, " My deputies were wrong out there, however the best thing to do is to file a restraining order on Erica Patton."

48. He told us Erica reported a false claim the night of our arrest.

49. On May 19, 2008, my father and I met with Shasta County Juvenile Probation Officer, **Creighton Darling.**

50. The probation officer told us there is not going to be any charges filed against me and that he felt the time I had already spent in juvenile detention was enough.

51. June 11, 2008, Lillian Simonis, Leone Carey, and I went to the Juvenile Probation Department to obtain our records.

52. We requested the booking sheet, arresting officers reports, pictures taken, any signed documents, and our release forms.

53. Probation officer Darling told us no records were there, but we may find them if we look in the clerks office at the Court House on the 3rd floor.

### DECLARATION

I, Laura Lovett, declare under penalty of perjury under the laws of the State of California the foregoing is true and correct to the best of my knowledge. This declaration executed June 12, 2008, Redding, California.

Laura Lovett,    Seal.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Shasta_ }

On _June 12 2008_ before me, _Beth G Renfree, Notary Public_
   Date                                  Here Insert Name and Title of the Officer

personally appeared _Laura Lovett_
                              Name(s) of Signer(s)

_____

**[Notary seal:]**
BETH G. RENFREE
COMM. NO. 1793970
NOTARY PUBLIC - CALIFORNIA
SHASTA COUNTY
MY COMM. EXP. APRIL 13, 2012

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Beth G Renfree_
                    Signature of Notary Public

---

## — OPTIONAL —

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Affidavit of Laura Lovett_

Document Date: _June 12 2008_                Number of Pages: _4_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _____

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

## AFFIDAVIT OF HANNAH MOORE

I, **Hannah Moore**, the Affiant, address, 2520 Hawn Avenue, Redding CA 96002, do hereby swear, declare and depose: that I am competent to state the matters set forth herein; that I have personal knowledge of the facts stated herein; that all the facts stated herein are true, correct and certain, admissible as evidence, and if called upon as a witness I will testify to their veracity:

1. On April 22, 2008, I was staying the night at **Cody Engh's** house in Palo Cedro.

2. My girlfriends, **Laura Lovett** and **Lillian Simonis** and I, were woke up and ordered to get out of the bedroom by strangers.

3. **Cody Engh**, was handcuffed on the couch.

4. In the house were four strangers, two white adult males and two white adult females, all wearing uniforms and guns.

5. They did not identify themselves to me.

6. The big female demanded our names and phone numbers.

7. The big female said **Laura** lied to her and was under arrest.

8. She handcuffed **Laura**, grabbed her by the hair and slammed her on the floor, all the while Laura resisted her assault.

9. One of the males joined in the assault and zip locked her feet together and tied them up to her hands.

10. **Lillian**, was drug down the hall by two males, she was kneed in her back and her head, and violently subdued and handcuffed, before my eyes.

11. I saw a male grab **Lillian** by the hair and bang her head on the floor.

12. **Cody**, **Laura**, **Tory**, and I, told them, "Not to hurt **Lillian's** head because she had suffered a very bad head injury and was not healed from that."

13. All four strangers were aggressive, assaultive, and verbally abusive saying, "shut your fucking mouths," and "We can do anything we want to you."

Exhibit A-4
1 of 3

14. They told us that if either one of the young men at the house (**Cody** and **Tory** ) had had sex with any of us girls, they could be charged with statutory rape.

15. As **Laura** lay hogtied on the floor, the two males stood over her, making fun of her, saying, "Who would want this bitch as girlfriend" , "Any guy could do better than this".

16. One of the adult males went through the entire house and garage but never told us what he was looking for.

17. He searched our purses and came out of the bedroom with us girls'drivers licences.

18. From what I remember, **Cody** and **Tory** were told to leave or they would be arrested.

19. I had my own car at **Cody**'s house, but was told I could not drive it and would be taken home by them, and I was forced to get into their car.

20. **Lillian**'s aunt drove in to get her, but the strangers had her in their car and did not let her go with her aunt.

21. They had me locked in the backseat of another car and the two females raced down highway 44 to the Juvenile Hall.

22. I was forced to stay in the vehicle with the two female, while **Laura** and **Lillian** were taken inside the Juvenile Hall building.

23. The two female said, "We were kids once, we aren't stupid, you can tell us what was going on tonight."

24. I had no idea what they were talking about.

25. They drove me home, but kept me locked in the backseat while they told my mother lies about the evening .

26. I asked to be taken back to my car, at Cody's house, but the two females refused. I had to get a ride the following day.

27. A Sergeant **Lillibridge** of Shasta County Sheriff's Department requested a meeting with **Laura**, **Lillian** and **I**.

28. On 4/25/2008,we met **Lillibridge** and he apologized for his deputies and said they were in the wrong out there.

2 of 3

29. **Lillibridge** explained to us girls, that the deputies actions that night, were based on a **Erica Patton** false report phoned in April 22, 2008.

30. **Lillibridge** had personally prepared restraining orders and complaints against **Erica Patton**, for each of us three girls to file.

31. **Laura**, **Lillian** and I had NO reason to believe him, let alone file restraining orders and complaints against a girl we hardly knew.

32. I certainly did not believe she was a personal threat to me, but I did believe the four adult strangers (deputies) were.

## DECLARATION

I, **Hannah Moore**, declare under penalty of perjury under the laws of the State of California the foregoing is true and correct to the best of my knowledge. This declaration executed June 5, 2008, Redding, California.

*Hannah Moore*

**Hannah Moore,**        Seal.

3 of 3

## AFFIDAVIT OF
Melinda Simonis
22509 Knollwood Drive
Palo Cedro, Ca 96073

I, Melinda Simonis, the Affiant, do hereby swear, declare and depose: that I am competent to state the matters set forth herein; that I have personal knowledge of the facts stated herein; that all the facts stated herein are true, correct and certain, admissible as evidence, and if called upon as a witness I will testify to their veracity: that all the facts are true.

1. On April 23, 2008, a short time after 12:00 A.M. I, Melinda Simonis, arrived at my nephew's house located at 8742 Silverbridge Road, Palo Cedro, Ca. 96073, to check on my niece Lillian Simonis. I received a phone call that something was going on at this address.

2. When I arrived at the home, two County Sheriff's vehicles were parked in the driveway and Lillian was in the backseat of one the vehicles.

3. I spoke to a male and two females in uniform. I informed them who I was and that I was there to check on Lillian Simonis. I let them know that she had just been released from the hospital three weeks prior due to a serious head injury and that I was very concerned about her. They told me they were not concerned with any of that and ask me if I could calm her down before they took her in.

4. After speaking with Lillian for a few brief moments and calming her down, Lillian proceeded to tell what had happened inside the house. The officer then cut her off and informed me he was ready to leave.

5. The deputy asks me who Lillian's guardian was and if I knew how to get in touch with her. I gave the information to him who the guardian was, along with my contact information. I let him know that I would be available to pick Lillian up if they could not reach anyone.

6. I then left the premises.

## DECLARATION
I, Melinda Simonis, declare under penalty of perjury under the laws of the State of California the foregoing is true and correct to the best of my knowledge. This declaration executed July 1, 2008, Redding, California.

Melinda Simonis

Lillian Simonis
P. O. BOX 183
Palo Cedro, Ca. 96073

Tom Bosenko
Sheriff of Shasta Co.
1525 Court St.
Redding, Ca. 96001

Ref. Incident of April 22th, 2008, at 8742 Silverbmidge Road, in
Palo Cedro, Shasta county.

Dear Sir,

This is my written demand for all documents connected to the
incident referenced above.  The documents needed is to include
but is not limited to;

A copy of the warrant that was executed by the officers involved.

A copy of all reports made by all of the officers involved with
or connected to the incident referenced above, either during or
after the execution, also to include any notes made.

A copy of the booking sheet of the subjects seized in the
incident.

A list of all officers involved both during and after the
incident including their employee numbers and badge numbers and
their immediate supervisor and the watch commander on duty at the
time of the incident.

Any other documents notes or information gathered or created as
the result of this incident and a list agencies with whom
information on this incident and the subjects was shared.

Four copies of the citizens complaint form used by Shasta county
Sheriff's department.

Please send the above listed documents to me at the address above
within 5 working days.  If any of the documents are not readily
available please state so and give me a date when they will be
available.

I thank you for your time in this matter.

Lillian Simonis, seal.                    08/09/08

Exhibit A-5

# Office of the County Counsel

## County of Shasta

### MICHAEL A. RALSTON, COUNTY COUNSEL

**ASSISTANT**
John L. Loomis

**DEPUTIES**
Rubin E. Cruse, Jr.*
David M. Yorton, Jr.*
Debra K. Barriger*
James R. Ross*
Adam M. Pressman

*Denotes Senior Deputy

**MAIN OFFICE**
1450 Court Street, Suite 332
Redding, California 96001-1675
(530) 225-5711
(530) 225-5817 FAX
Relay Service, dial 711

**BRANCH OFFICE**
1313 Yuba Street
Redding, California 96001
(530) 225-5586
(530) 229-8111 FAX
Relay Service, dial 711

June 23, 2008

Lillian Simonis
P.O. Box 183
Palo Cedro, CA  96073

Re:   Incident of April 22, 2008

Dear Ms. Simonis:

This is in response to your undated letter received by the Shasta County Sheriff's Office on June 12, 2008, in which you request certain information and records relating to the above-referenced matter.

Normally, juvenile records are confidential and may not be disclosed (Welf. & Inst. Code, §827). However, since you were a juvenile involved in the incident, information may be disclosed to you (Welf. & Inst. Code, §827, subd. (a)(5)). Nevertheless, I would caution you that information relating to a juvenile case may not be disseminated to any other person or agency (Welf. & Inst. Code, §827, subd. (a)(4)). You may wish to discuss this restriction with your legal counsel.

In any event, I have advised the Sheriff's Office to treat your request as having been made under the California Public Records Act (Gov. Code. §6250 et seq).

Under the Public Records Act, records of complaints to, or investigations conducted by, any local police agency are exempt from disclosure. However, certain information derived from those records must be disclosed. (Gov. Code, §6254, subd. (f))

Therefore, in compliance with the Public Records Act, the following information is provided:

Lillian Smonis
June 23, 2008
Page Two

- Arrested was Laura Lovett ("Lovett"), born November 28, 1990, brown hair, brown eyes, female, 5'2" in height, and weighing 120 lbs. The arrest occurred on April 22, 2008, at approximately 2255 hours. Lovett was subsequently booked at the Shasta County Juvenile Hall. Lovett was arrested for two charges of battery upon a peace officer (Pen. Code, §243, subd. (b)) and on a charge of resisting/obstructing a peace officer (Pen Code, §148, subd. (a)).

- Arrested was Lillian Esther Simonis ("Simonis"), born May 28, 1990, brown hair, blue eyes, female, 5"5" in height, and weighing 142 lbs. The arrest occurred on April 22, 2008, at approximately 2255 hours. Simonis was subsequently booked at the Shasta County Juvenile Hall. Simonis was arrested on a charge of resisting/obstructing a peace officer (Pen Code, §148, subd. (a)).

- The arrests occurred after Deputy Sheriffs from the Shasta County Sheriff's Office responded to a report of an assault allegedly perpetrated by Simonis. The Deputy Sheriffs subsequently contacted Simonis and Lovett. In the course of the investigation, Lovett became argumentative and subsequently kicked two Deputy Sheriffs. She was thereafter arrested on the charges indicated above. Also in the course of the investigation, Simonis interfered with the investigation being conducted by the Deputy Sheriffs by attempting to walk away when told to sit and by grabbing a Deputy Sheriff's jacket and trying to kick the Deputy Sheriffs.

Under the Public Records Act, the other documents you have requested, if they exist, are exempt from disclosure.

You have also requested four copies of the citizen complaint form used by the Shasta County Sheriff's Office. Enclosed is a photocopy of that form. You may make as many copies as you desire.

If you have any questions, please contact me.

Sincerely,

JOHN L. LOOMIS,
Assistant County Counsel

JLL/jll
Enclosure
cc:   Sheriff Tom Bosenko
      Candice Filek, Records Supervisor

Public Records Act Sheriff Letter Response to Lillian Simonis 6.08

Lillian Simonis
P. O. BOX 183
Palo Cedro, Ca. 96073
July 24, 2008

Creighton Darling
2680 Radio Ln
Redding, CA 96001
(530) 225-5838

Referring to the incident of April 22th, 2008, at 8742
Silverbridge Road, in Palo Cedro, Shasta County.

Dear Sir,

This is my written demand for all documents connected to the
incident referenced above.  The documents needed is to include
but is not limited to;

A copy of the warrant that was executed by the officers involved.

A copy of all reports made by all of the officers involved with
or connected to the incident referenced above, either during or
after the execution, also to include any notes made.

A copy of the booking sheet of the subjects seized in the
incident.

A list of all officers involved both during and after the
incident including their employee numbers and badge numbers and
their immediate supervisor and the watch commander on duty at the
time of the incident.

Any other documents notes or information gathered or created as
the result of this incident and a list agencies with whom
information on this incident and the subjects was shared.

Please send the above listed documents to me at the address above
within 5 working days.  If any of the documents are not readily
available please state so and give me a date when they will be
available.

I thank you for your time in this matter.

Lillian Simonis, Seal.

Exhibit A - 6



# SHASTA COUNTY PROBATION DEPARTMENT
JUVENILE DIVISION
2680 Radio Lane
Redding, CA 96001
(530) 225-5230 FAX: (530) 225-5448

**Brian J. Richart**
*Chief Probation Officer*
**Ann Stow**
*Division Director*

Lillian Simonis
P.O. Box 183
Palo Cedro, CA 96073

Ms. Simonis,

Our department received your letter requesting documents pertaining to the 4/22/08 incident.
The documents requested belong to the Sheriff's Department and cannot be distributed by the
Probation Department. The documents can be purchased from the Sheriff's Department.

Respectfully,

Gerald Salles
Supervising Probation Officer



SAFER COMMUNITIES
BETTER LIVES



# SHASTA COUNTY PROBATION DEPARTMENT
JUVENILE DIVISION
2680 Radio Lane
Redding, CA 96001
(530) 225-5230 FAX: (530) 225-5448

**Brian J. Richart**
*Chief Probation Officer*
**Art Alvarado**
*Division Director*

May 2, 2008

To the Parent/Guardian of:
LILLIAN SIMONIS
28405 OAK RUN TO FERN RD
OAK RUN, CA 96069

Dear Parent/Guardian:

Your child was cited by law enforcement for the offense of TRESPASS:CLOSED LAND &
DELAYING PEACE OFFICER in violation of 602(O) & 148(A)(1) PC.

Law enforcement refers the citation to the Probation Department. It is the responsibility of the
Probation Officer to determine what action(s) should be taken in regard to the offense. The matter may
be handled informally by the Probation Department or the Probation Officer can refer the case to the
District Attorney for Juvenile Court action.

An appointment is scheduled for you and your child on THURSDAY, MAY 15, 2008 AT 3:30 P.M.. In
order for us to make the necessary determination, please complete the enclosed Minor and Family Self-
Assessment form and <u>bring it with you to the appointment</u>. It is important that you fill the document out
completely and honestly.

If you have any questions or need additional information, please do not hesitate to contact me.

Sincerely,

*Creighton Darling*
CREIGHTON DARLING
Deputy Probation Officer

JPX letter

# SHASTA COUNTY PROBATION DEPARTMENT

JUVENILE DIVISION
2680 Radio Lane
Redding, CA 96001
(530) 225-5230 FAX: (530) 225-5448

**Brian J. Richart**
*Chief Probation Officer*
**Art Alvarado**
*Division Director*

Date: _5/15/08 @ 3:30 pm_

## PROBATION SERVICES PLAN

Minor's Name: _SIMONIS, LILLIAN ESTHER_ D.O.B. _5/28/90_

☐ **Juvenile Court Work Program,** _____ **days. Sign-up for the program at the Juvenile Justice Center reception window.**

☐ **Community Service at:** _____

☐ **Peer Court. The Peer Court Contract has been reviewed and signed by the minor and parent.**

☐ **Minor is to attend Anger Management Counseling.**
    **Class location:** _____

☐ **Minor is to attend Life Skills.**
    **Class location: 2400 Washington Ave, Redding**

☐ **Drug Testing:** _____

☐ **Parenting Class:** _____

☐ **Drug and Alcohol Education:** _____

☐ **Victim Awareness Class on:** _____ **at** _____
    **Class location: 2680 Radio Ln., Bldg. #6, Redding**

☐ **Restitution to:** _____
    **Amount: $** _____ **( ) agreement attached.**

☐ **Victim Apology letter. Return to Probation Dept. by** _____

☐ **Coroner's Tour on:** _____ **at** _____

_Closed After INVESTIGATION_

_Lillian Simonis_                    _Mary Coller_
**Minor's Signature**          **Parent's Signature**

SHASTA COMMUNITIES
SAFER LIVES

Laura Lovett
1920 trumpet Dr.
Redding Ca. 96002

Tom Bosenko
Sheriff of Shasta Co.
1525 Court St.
Redding, Ca. 96001

Ref. Incident of April 22th, 2008, at 8742 Silverbridge Road, in
Palo Cedro, Shasta county.

Dear Sir,

This is my written demand for all documents connected to the
incident referenced above.  The documents needed is to include
but is not limited to;

A copy of the warrant that was executed by the officers involved.

A copy of all reports made by all of the officers involved with
or connected to the incident referenced above, either during or
after the execution, also to include any notes made.

A copy of the booking sheet of the subjects seized in the
incident.

A list of all officers involved both during and after the
incident including their employee numbers and badge numbers and
their immediate supervisor and the watch commander on duty at the
time of the incident.

Any other documents notes or information gathered or created as
the result of this incident and a list agencies with whom
information on this incident and the subjects was shared.

One
Four copies of the citizens complaint form used by Shasta county
Sheriff's department.

Please send the above listed documents to me at the address above
within 5 working days.  If any of the documents are not readily
available please state so and give me a date when they will be
available.

I thank you for your time in this matter.

Laura Lovett, Seal.

Exhibit A-7

# Office of the County Counsel

# County of Shasta

### MICHAEL A. RALSTON, COUNTY COUNSEL

**ASSISTANT**
John L. Loomis

**DEPUTIES**
Rubin E. Cruse, Jr.*
David M. Yorton, Jr.*
Debra K. Barriger*
James R. Ross*
Adam M. Pressman

*Denotes Senior Deputy

**MAIN OFFICE**
1450 Court Street, Suite 332
Redding, California 96001-1675
(530) 225-5711
(530) 225-5817 FAX
Relay Service, dial 711

**BRANCH OFFICE**
1313 Yuba Street
Redding, California 96001
(530) 225-5586
(530) 229-8111 FAX
Relay Service, dial 711

June 22, 2008

Laura Lovett
1920 Trumpet Drive
Redding, CA 96002

Re: Incident of April 22, 2008

Dear Ms. Lovett:

This is in response to your undated letter received by the Shasta County Sheriff's Office on June 12, 2008, in which you request certain information and records relating to the above-referenced matter.

Normally, juvenile records are confidential and may not be disclosed (Welf. & Inst. Code, §827). However, since you were a juvenile involved in the incident, information may be disclosed to you (Welf. & Inst. Code, §827, subd. (a)(5)). Nevertheless, I would caution you that information relating to a juvenile case may not be disseminated to any other person or agency (Welf. & Inst. Code, §827, subd. (a)(4)). You may wish to discuss this restriction with your legal counsel.

In any event, I have advised the Sheriff's Office to treat your request as having been made under the California Public Records Act (Gov. Code, §6250 et seq).

Under the Public Records Act, records of complaints to, or investigations conducted by, any local police agency are exempt from disclosure. However, certain information derived from those records must be disclosed. (Gov. Code, §6254, subd. (f))

Therefore, in compliance with the Public Records Act, the following information is provided:

Laura Lovett
June 23, 2208
Page Two

- Arrested was Laura Lovett ("Lovett"), born November 28, 1990, brown hair, brown eyes, female, 5'2" in height, and weighing 120 lbs. The arrest occurred on April 22, 2008, at approximately 2255 hours. Lovett was subsequently booked at the Shasta County Juvenile Hall. Lovett was arrested for two charges of battery upon a peace officer (Pen. Code, §243, subd. (b)) and on a charge of resisting/obstructing a peace officer (Pen Code, §148, subd. (a)).

- Arrested was Lillian Esther Simonis ("Simonis"), born May 28, 1990, brown hair, blue eyes, female, 5"5" in height, and weighing 142 lbs. The arrest occurred on April 22, 2008, at approximately 2255 hours. Simonis was subsequently booked at the Shasta County Juvenile Hall. Simonis was arrested on a charge of resisting/obstructing a peace officer (Pen Code, §148, subd. (a)).

- The arrests occurred after Deputy Sheriffs from the Shasta County Sheriff's Office responded to a report of an assault allegedly perpetrated by Simonis. The Deputy Sheriffs subsequently contacted Simonis and Lovett. In the course of the investigation, Lovett became argumentative and subsequently kicked two Deputy Sheriffs. She was thereafter arrested on the charges indicated above. Also in the course of the investigation, Simonis interfered with the investigation being conducted by the Deputy Sheriffs by attempting to walk away when told to sit and by grabbing a Deputy Sheriff's jacket and trying to kick the Deputy Sheriffs.

Under the Public Records Act, the other documents you have requested, if they exist, are exempt from disclosure.

You have also requested four copies of the citizen complaint form used by the Shasta County Sheriff's Office. Enclosed is a photocopy of that form. You may make as many copies as you desire.

If you have any questions, please contact me.

Sincerely,

JOHN L. LOOMIS,
Assistant County Counsel

JLL/jll
Enclosure
cc:   Sheriff Tom Bosenko
      Candice Filek, Records Supervisor

Public Records Act Sheriff Letter Response to Laura Lovett 6.08

Laura Lovett
1920 Trumpet Dr.
Redding Ca. 96002
July 24, 2008

Creighton Darling
2680 Radio Ln
Redding, CA 96001
(530) 225-5838

Referring to the incident of April 22th, 2008, at 8742
Silverbridge Road, in Palo Cedro, Shasta County.

Dear Sir,

This is my written demand for all documents connected to the
incident referenced above.  The documents needed is to include
but is not limited to;

A copy of the warrant that was executed by the officers involved.

A copy of all reports made by all of the officers involved with
or connected to the incident referenced above, either during or
after the execution, also to include any notes made.

A copy of the booking sheet of the subjects seized in the
incident.

A list of all officers involved both during and after the
incident including their employee numbers and badge numbers and
their immediate supervisor and the watch commander on duty at the
time of the incident.

Any other documents notes or information gathered or created as
the result of this incident and a list agencies with whom
information on this incident and the subjects was shared.

Please send the above listed documents to me at the address above
within 5 working days.  If any of the documents are not readily
available please state so and give me a date when they will be
available.

I thank you for your time in this matter.

Laura Lovett, seal.

## Shasta Regional Medical Center - Redding, CA 96001-0853

| | | | |
|---|---|---|---|
| **Patient:** | LOVETT, LAURA | **DOB:** | 11/28/1990 |
| **MR #:** | 000457052 | **Age/Gender:** 17y F | |
| **DOS:** | 4/23/2008 01:20 | **Acct #:** | 2735121 |
| **Private Phys:** | Jack W. Finch MD | **ED Phys:** | Gregory A. Greenberg, MD |

**CHIEF COMPLAINT:**
********

**Enc. Type:**
Initial

**ACUITY:**
05_Routine

## Physicians caring for patient:
Gregory A. Greenberg, MD

## HISTORY OF PRESENT ILLNESS

**Note**
HPI text: Pt is here for medical clearance. She was drinking, arrested, resisted arrest. She denies any complaints at this time. No nausea, vomiting, headache, chest pain, shortness of breath, dizziness, weakness. <GG 04/23/08 01:27 >

## PAST HISTORY

**Past Medical/Surgical History**
No significant medical history. <GG 04/23/08 01:27 >
   No significant surgical history. <LH2 04/23/08 01:39 >
      Reports pneumonia vaccination is not current. <LH2 04/23/08 01:39 >
      Reports flu vaccination is not current. <LH2 04/23/08 01:39 >
      Reports tetanus vaccination is not current. <LH2 04/23/08 01:39 >
   Immunization: Immunization history unknown. < LH2 4/23/2008 01:40>

**Past Social History**
Patient is single. <GG 04/23/08 01:27 >
Patient does not use tobacco. <GG 04/23/08 01:27 >
Patient consumes alcohol on occasion. <GG 04/23/08 01:27 >
Patient does not use drugs. <GG 04/23/08 01:27 >

**Past Family History**
Non-contributory family history. <GG 04/23/08 01:27 >

## ALLERGIES
PATIENT ALLERGIES: No known allergies. < LH2 4/23/2008 01:39>

## MEDICATION(S) LIST
HOME MEDICATIONS: Patient not currently taking any medications. < LH2 4/23/2008 01:39>

## REVIEW OF SYSTEMS

**All Other Systems Negative**
All systems reviewed and were negative except otherwise listed under the history chief complaint.
<GG 04/23/08 01:27 >

## EXAM

Medical Records Chart
Exhibit B - 1

PRINTED BY: kareng                    DATE    4/24/2008

# Shasta Regional Medical Center - Redding, CA 96001-0853

| | | | |
|---|---|---|---|
| **Patient:** | LOVETT, LAURA | **DOB:** | 11/28/1990 |
| **MR #:** | 000457052 | **Age/Gender:** 17y F | |
| **DOS:** | 4/23/2008 01:20 | **Acct #:** | 2735121 |
| **Private Phys:** | Jack W. Finch MD | **ED Phys:** | Gregory A. Greenberg, MD |

Height: 63 Inches (est)
Weight: 54.4 kg. (119.9 lbs.) (est)

## VITAL SIGNS

| Initials/Date/Time | Temp(F) | Rt. | Pulse | Resp | Syst | Diast | Pos. | Pain Sc | O2 Sat | O2lpm |
|---|---|---|---|---|---|---|---|---|---|---|
| LH2 4/23/2008 01:37 | 98.8 | O | 95 | 16 | 122 | 67 | S | 0 | 97 | 0 |

## TRIAGE

Arrival: Patient arrived ambulatory via law enforcement from home accompanied by police ambulance bay < LH2 4/23/2008 01:36>

Local Physician: Jack W. Finch, MD < LH2 4/23/2008 01:37>

Chief complaint quote: Medical clearance for juvi. <LH2 04/23/08 01:37 >

ABC's: Airway is open and patent. Respirations are spontaneous and non-labored. Rise and fall of chest cavity equal and symmetrical. Patient speaking in complete sentences without difficulty. <LH2 04/23/08 01:38 >

Mental status: Patient awake, alert, cooperative, oriented x 3. Affect is calm. Patient speaking coherently. <LH2 04/23/08 01:38 >

Skin warm, dry, and normal for race and age. <LH2 04/23/08 01:38 >

PATIENT ALLERGIES: No known allergies. < LH2 4/23/2008 01:39>

HOME MEDICATIONS: Patient not currently taking any medications. < LH2 4/23/2008 01:39>

The patient is asymptomatic for TB. <LH2 04/23/08 01:39 >

Medical and surgical history obtained. <LH2 04/23/08 01:39 >

  LMP:Saturday, March 22, 2008 <LH2 04/23/08 01:40 >

Advanced directives: Patient states they do not have an Advance Helathcare Directive. < LH2 4/23/2008 01:40>

Domestic violence: [-] <LH2 4/23/08 01:40 >

## NURSING NOTES

04/23/08 01:25 I have acknowledged the transfer of care for this patient. Entered: <LH2 4/23/2008 01:35>

04/23/08 01:25 Orientation/safety: The patient was escorted by officer . Patient was placed on stretcher . Bed placed in low/locked position and side rail up x 1 . Call light is not needed because the patient is visible to nursing staff . Explanation of care provided to patient . Plan of care: name band and verbalizes understanding of process . Comfort measures include position of comfort Entered: <LH2 4/23/2008 01:36>

| 04/23/08 01:37 | Temp(F) | Rt. | Pulse | Resp | Syst | Diast | Pos. | Pain Sc | O2 Sat | O2lpm |
|---|---|---|---|---|---|---|---|---|---|---|
| | 98.8 | O | 95 | 16 | 122 | 67 | S | 0 | 97 | 0 |

## AFTER CARE INSTRUCTIONS

General Discharge Instructions - English <GG 04/23/08 01:32 >
**Signatures:**

**Medical Records Chart**

PRINTED BY: kareng                    DATE    4/24/2008

# Shasta Regional Medical Center - Redding, CA 96001-0853

| | | | | |
|---|---|---|---|---|
| **Patient:** | LOVETT, LAURA | | **DOB:** | 11/28/1990 |
| **MR #:** | 000457052 | | **Age/Gender:** | 17y F |
| **DOS:** | 4/23/2008 01:20 | | **Acct #:** | 2735121 |
| **Private Phys:** | Jack W. Finch MD | | **ED Phys:** | Gregory A. Greenberg, MD |

*Nursing Data electronically signed by: Lynda Hughes, RN 4/23/2008 01:49*
*Chart electronically signed by: Gregory A. Greenberg, MD 4/24/2008 06:10*

**Chart documented by:**
GG: Gregory A. Greenberg, MD
JH: Janice Henley, TECH
LH2: Lynda Hughes, RN

**Medical Records Chart**

PRINTED BY: kareng                    DATE      4/24/2008

**Shasta Regional Medical Center**
**1100 Butte Street,**
**Redding, CA 96001-0853**
**5302445400**

| Patient: | LOVETT, LAURA | | MR#: | 000457052 |
|---|---|---|---|---|
| Physician: | Gregory A. Greenberg, MD | | Acct #: | 2735121 |
| | | | DOB: | 11/28/1990 |

The emergency physician provided an on-the-spot interpretation of your x-rays and/or EKG. A specialist will do a final interpretation of these tests. If a change in your diagnosis or treatment is needed, we will contact you. It is critical that we have a current phone number for you.

- Pick up your x-rays in Radiology before your follow-up appointment.

- Culture results take 48 hours. The Emergency Department will contact you if the results require a change in your treatment.

Additional information or instructions:
**MEDICATIONS GIVEN IN THE EMERGENCY DEPARTMENT:**


**PRESCRIPTIONS GIVEN IN THE EMERGENCY DEPARTMENT:**


* * *If side effects develop, such as a rash, difficulty breathing, or a severe upset stomach, stop the medication and call your doctor or the Emergency Department.*

I, LOVETT, LAURA, understand the instructions and will arrange for follow-up care.


<PTSig>
Patient Signature

<RepSig>
Representative Signature

<StaffSig>
Staff Signature


Date/time:  23-Apr-2008 01:32

Page 2 of 2

**Shasta Regional Medical Center**
**1100 Butte Street,**
**Redding, CA 96001-0853**
**5302445400**

| | | | |
|---|---|---|---|
| Patient: | LOVETT, LAURA | MR#: | 000457052 |
| Physician: | Gregory A. Greenberg, MD | Acct #: | 2735121 |
| | | DOB: | 11/28/1990 |

The emergency physician provided an on-the-spot interpretation of your x-rays and/or EKG. A specialist will do a final interpretation of these tests. If a change in your diagnosis or treatment is needed, we will contact you. It is critical that we have a current phone number for you.

- Pick up your x-rays in Radiology before your follow-up appointment.

- Culture results take 48 hours.  The Emergency Department will contact you if the results require a change in your treatment.

Additional information or instructions:
**MEDICATIONS GIVEN IN THE EMERGENCY DEPARTMENT:**


**PRESCRIPTIONS GIVEN IN THE EMERGENCY DEPARTMENT:**


**\* \*** *If side effects develop, such as a rash, difficulty breathing, or a severe upset stomach, stop the medication and call your doctor or the Emergency Department.*


I, LOVETT, LAURA, understand the instructions and will arrange for follow-up care.


      <PTSig>
Patient Signature

      <RepSig>
Representative Signature

      <StaffSig>
Staff Signature

PRINTED BY: kareng                          DATE      4/24/2008

**Shasta Regional Medical Center**
**1100 Butte Street,**
**Redding, CA 96001-0853**
**5302445400**

| Patient: | LOVETT, LAURA | MR#: | 000457052 |
|---|---|---|---|
| Physician: | Gregory A. Greenberg, MD | Acct #: | 2735121 |
| | | DOB: | 11/28/1990 |

## General Emergency Department Discharge Instructions

The exam and treatment you received in the Emergency Department were for an urgent problem and are not intended as complete care. It is important that you follow up with a doctor, nurse practitioner, or physician's assistant for ongoing care. If your symptoms become worse or you do not improve as expected and you are unable to reach your usual health care provider, you should return to the Emergency Department. We are available 24 hours a day.

You were treated in the Emergency Department by:
Gregory A. Greenberg, MD

Your diagnosis is
Primary Diagnosis: Pain - arm
Secondary Diagnosis:
Tertiary Diagnosis:

What to do:
- Follow the instructions on the additional sheets you were given:

- Discharge from ED: The patient is discharged to Jail . Patient's condition is satisfactory . Medically cleared for jail.
- Take this sheet with you when you go to your follow-up visit.
- If you have any problem arranging the follow-up visit, contact the Emergency Department immediately.
- Take all medications as directed.

Studies done in the Emergency Department:

## Shasta Regional Medical Center - Redding, CA 96001-0853

| | | | |
|---|---|---|---|
| **Patient:** | SIMONIS, LILLIAN E | **DOB:** | 5/28/1990 |
| **MR #:** | 000457053 | **Age/Gender:** 17y F | |
| **DOS:** | 4/23/2008 01:23 | **Acct #:** | 2735130 |
| **Private Phys:** | **No PMD | **ED Phys:** | Gregory A. Greenberg, MD |

| | | |
|---|---|---|
| **CHIEF COMPLAINT:** | **Enc. Type:** | **ACUITY:** |
| See chief complaint quote | Initial | 05_Routine |

## Physicians caring for patient:
Gregory A. Greenberg, MD

# HISTORY OF PRESENT ILLNESS

**Note**
HPI text: Pt is here for medical clearance for jail. She was resisting arrest. She complains of right ear pain for a few days. She states that she had a trauma from MVA 2 months ago. No nausea, vomiting, headache, dizziness, chest pain, cough, shortness of breath, dizziness. <GG 04/23/08 01:33 >

# PAST HISTORY

**Past Medical/Surgical History**
No significant medical history. <GG 04/23/08 01:33>
   Vaccination history unknown. <KMD 04/23/08 01:38 >
Immunization history unknown.
< LH2 4/23/2008 01:48>

**Past Social History**
Patient is single. <GG 04/23/08 01:33 >
Patient does not use tobacco. <GG 04/23/08 01:33 >
Patient does not use alcohol. <GG 04/23/08 01:33 >

**Past Family History**
Non-contributory family history. <GG 04/23/08 01:33 >

# ALLERGIES
PATIENT ALLERGIES: No known allergies. < KMD 4/23/2008 01:37>

# MEDICATION(S) LIST
HOME MEDICATIONS: Patient not currently taking any medications. < KMD 4/23/2008 01:37>

# REVIEW OF SYSTEMS

**All Other Systems Negative**
All systems reviewed and were negative except otherwise listed under the history chief complaint.
<GG 04/23/08 01:33 >

# EXAM
Vitals: Vital signs reviewed
Gen: Well developed, well nourished in no acute distress. Comfortable appearing
Skin: A few abrasions on wrists.
Head: Normocephalic, atraumatic.

Medical Records Chart
Exhibit B - 2

## Shasta Regional Medical Center - Redding, CA 96001-0853

| | | | |
|---|---|---|---|
| **Patient:** | SIMONIS, LILLIAN E | **DOB:** | 5/28/1990 |
| **MR #:** | 000457053 | **Age/Gender:** | 17y F |
| **DOS:** | 4/23/2008 01:23 | **Acct #:** | 2735130 |
| **Private Phys:** | * *No PMD | **ED Phys:** | Gregory A. Greenberg, MD |

Eyes: No conjunctival erythema, no discharge. PERRL, EOMI.
Ears: Canals clear bilaterally. TMs clear bilaterally. Right canal sensitive to light touch.
Nose: Normal external nose. No rhinorrhea.
Mouth: Moist mucous membranes.
Pulmonary: Clear to auscultation bilaterally. Normal respiratory effort. Good air exchange bilaterally
CV: Regular rate and rhythm without murmurs, rubs, gallops
Abdomen: Positive bowel sounds. Soft, non tender, non distended, no masses. No rebound tenderness, no guarding.
Neuro: Alert and oriented x 3. Strength 5/5 in upper and lower
extremities.
Ext: Bilateral wrists with some proximal swelling. Bilateral wrists FROM without tenderness, no bony tenderness, no snuff box tenderness. <GG 04/23/08 01:34 >

# ORDERS

**Charges**
ER VISIT LVL II < Janice Henley, TECH 4/23/2008 02:40>

# DIAGNOSIS

Ear pain
Pain - arm
<GG:Gregory A. Greenberg, MD 04/23/08 01:35>

# DISPOSITION

**Physician**
Discharge from ED: The patient is discharged to Jail . Patient's condition is satisfactory . Medically cleared for jail. < GG 4/23/2008 01:35>

**Nursing**
Disposition is discharged.
< LH2 4/23/2008 01:46>
The patient was discharged to Law enforcement . The patient is alert and oriented . Patient's condition: stable . Discharge mode is ambulatory . Patient accompanied by police . The patient's diagnosis, condition and treatment were explained to patient or parent/guardian. The patient/responsible party expressed understanding. Extended patient education (greater than 15 minutes) was not necessary for the patient/guardian. A discharge plan has been developed. A case manager was not involved in the process. Aftercare instructions were given to the patient. SRMC Fall Prevention Program In-Home Safety Check List was not given to the patient.
< LH2 4/23/2008 01:46>
Discharge done:Wednesday, April 23, 2008 01:46 <LH2 04/23/08 01:46 >

# Height and Weight

**Medical Records Chart**

PRINTED BY: KATHERINE          DATE      6/10/2008

# Shasta Regional Medical Center - Redding, CA 96001-0853

| Patient: | SIMONIS, LILLIAN E | DOB: | 5/28/1990 |
|---|---|---|---|
| MR #: | 000457053 | Age/Gender: | 17y F |
| DOS: | 4/23/2008 01:23 | Acct #: | 2735130 |
| Private Phys: | * *No PMD | ED Phys: | Gregory A. Greenberg, MD |

Height: 67 Inches (est)
Weight: 61.2 kg. (135.0 lbs.) (est)

## VITAL SIGNS

| Initials/Date/Time | Temp(F) | Rt. Pulse | Resp | Syst | Diast | Pos. | Pain Sc | O2 Sat | O2lpm |
|---|---|---|---|---|---|---|---|---|---|
| KMD 4/23/2008 01:36 | 98.5 | O 102 | 16 | 142 | 50 | S | 0 | 100 | 0 |

## TRIAGE

Arrival: Patient arrived ambulatory via police vehicle from juvenile hall accompanied by police ambulance bay < KMD 4/23/2008 01:35>

Local Physician: * *No PMD < KMD 4/23/08 01:35>

Chief complaint quote: medical clearance for juvenile <KMD 04/23/08 01:36 >

  ABC's: The airway is open and patent . Respiration(s) is/are spontaneous < KMD 4/23/2008 01:37>

  Mental status: The patient is awake and alert with an affect that is calm . The patient is oriented x 3 and speaking coherently < KMD 4/23/2008 01:37>

  Skin color, temperature, moisture: The patient's color is normal for age and race < KMD 4/23/2008 01:37>

PATIENT ALLERGIES: No known allergies. < KMD 4/23/2008 01:37>

HOME MEDICATIONS: Patient not currently taking any medications. < KMD 4/23/2008 01:37>

The patient is asymptomatic for TB. <KMD 04/23/08 01:37 >

Medical and surgical history obtained. <KMD 04/23/08 01:37 >

  LMP:March, 2008 <KMD 04/23/08 01:38 >

Advanced directives: Patient states they do not have an Advance Helathcare Directive. < KMD 4/23/2008 01:38>

Domestic violence: [-] <KMD 04/23/08 01:38 >

## NURSING NOTES

| 04/23/08 01:36 | Temp(F) | Rt. | Pulse | Resp | Syst | Diast | Pos. | Pain Sc | O2 Sat | O2lpm |
|---|---|---|---|---|---|---|---|---|---|---|
| | 98.5 | O | 102 | 16 | 142 | 50 | S | 0 | 100 | 0 |

04/23/08 01:39 Orientation/safety: The patient was escorted by officer . Patient was placed on stretcher . Bed placed in low/locked position and side rail up x 1 . Call light is within reach . Sheriff officer with patient. Patient in handcuffs on gurney. Entered: <KMD 4/23/2008 01:39>

## AFTER CARE INSTRUCTIONS

General Discharge Instructions - English <GG 04/23/08 01:35 >

**Signatures:**

*Nursing Data electronically signed by: Lynda Hughes, RN 4/23/2008 01:48*

*Chart electronically signed by: Gregory A. Greenberg, MD 4/24/2008 06:10*

**Medical Records Chart**

```
PRINTED BY: KATHERINE          DATE    6/10/2008
```

# Shasta Regional Medical Center - Redding, CA 96001-0853

| | | | |
|---|---|---|---|
| **Patient:** | SIMONIS, LILLIAN E | **DOB:** | 5/28/1990 |
| **MR #:** | 000457053 | **Age/Gender:** | 17y F |
| **DOS:** | 4/23/2008 01:23 | **Acct #:** | 2735130 |
| **Private Phys:** | **No PMD | **ED Phys:** | Gregory A. Greenberg, MD |

**Chart documented by:**
GG: Gregory A. Greenberg, MD
KMD: Kelly Marie Davis, RN
JH: Janice Henley, TECH
LH2: Lynda Hughes, RN

**Medical Records Chart**

PRINTED BY: KATHERINE          DATE      6/10/2008

**Shasta Regional Medical Center**
**1100 Butte Street,**
**Redding, CA 96001-0853**
**5302445400**

| | | | |
|---|---|---|---|
| Patient: | SIMONIS, LILLIAN E | MR#: | 000457053 |
| Physician: | Gregory A. Greenberg, MD | Acct #: | 2735130 |
| | | DOB: | 5/28/1990 |

The emergency physician provided an on-the-spot interpretation of your x-rays and/or EKG. A specialist will do a final interpretation of these tests. If a change in your diagnosis or treatment is needed, we will contact you. It is critical that we have a current phone number for you.

- Pick up your x-rays in Radiology before your follow-up appointment.

- Culture results take 48 hours. The Emergency Department will contact you if the results require a change in your treatment.

Additional information or instructions:
**MEDICATIONS GIVEN IN THE EMERGENCY DEPARTMENT:**

**PRESCRIPTIONS GIVEN IN THE EMERGENCY DEPARTMENT:**

\* \* *If side effects develop, such as a rash, difficulty breathing, or a severe upset stomach, stop the medication and call your doctor or the Emergency Department.*

I, SIMONIS, LILLIAN E, understand the instructions and will arrange for follow-up care.

&lt;PTSig&gt;
Patient Signature

&lt;RepSig&gt;
Representative Signature

&lt;StaffSig&gt;
Staff Signature

PRINTED BY: KATHERINE            DATE      6/10/2008

**Shasta Regional Medical Center**
1100 Butte Street,
Redding, CA 96001-0853
5302445400

| | | | | |
|---|---|---|---|---|
| Patient: | SIMONIS, LILLIAN E | | MR#: | 000457053 |
| Physician: | Gregory A. Greenberg, MD | | Acct #: | 2735130 |
| | | | DOB: | 5/28/1990 |

The emergency physician provided an on-the-spot interpretation of your x-rays and/or EKG. A specialist will do a final interpretation of these tests. If a change in your diagnosis or treatment is needed, we will contact you. It is critical that we have a current phone number for you.

- Pick up your x-rays in Radiology before your follow-up appointment.

- Culture results take 48 hours. The Emergency Department will contact you if the results require a change in your treatment.

Additional information or instructions:
**MEDICATIONS GIVEN IN THE EMERGENCY DEPARTMENT:**

**PRESCRIPTIONS GIVEN IN THE EMERGENCY DEPARTMENT:**

\* \* *If side effects develop, such as a rash, difficulty breathing, or a severe upset stomach, stop the medication and call your doctor or the Emergency Department.*

I, SIMONIS, LILLIAN E, understand the instructions and will arrange for follow-up care.

<PTSig>
_____
Patient Signature

<RepSig>
_____
Representative Signature

<StaffSig>
_____
Staff Signature

Date/time: 23-Apr-2008 01:35

Page 2 of 2

**Shasta Regional Medical Center**
**1100 Butte Street,**
**Redding, CA 96001-0853**
**5302445400**

| | | | |
|---|---|---|---|
| Patient: | SIMONIS, LILLIAN E | MR#: | 000457053 |
| Physician: | Gregory A. Greenberg, MD | Acct #: | 2735130 |
| | | DOB: | 5/28/1990 |

## General Emergency Department Discharge Instructions

The exam and treatment you received in the Emergency Department were for an urgent problem and are not intended as complete care. It is important that you follow up with a doctor, nurse practitioner, or physician's assistant for ongoing care. If your symptoms become worse or you do not improve as expected and you are unable to reach your usual health care provider, you should return to the Emergency Department. We are available 24 hours a day.

You were treated in the Emergency Department by:
Gregory A. Greenberg, MD

---

Your diagnosis is
Primary Diagnosis: Ear pain
Secondary Diagnosis: Pain - arm
Tertiary Diagnosis:

---

What to do:
• Follow the instructions on the additional sheets you were given:

• Discharge from ED: The patient is discharged to Jail . Patient's condition is satisfactory . Medically cleared for jail.
• Take this sheet with you when you go to your follow-up visit.
• If you have any problem arranging the follow-up visit, contact the Emergency Department immediately.
• Take all medications as directed.

Studies done in the Emergency Department:

Date/time:  23-Apr-2008 01:35                                                                    Page 1 of 2

Mercy Medical Center Redding - Redding, CA 96001

DATE OF ADMISSION:     02/18/2008

DATE OF DISCHARGE:     02/22/2008
JOB #:   9931

FINAL DIAGNOSIS:
Right temporal bone linear skull fracture and left temporal lobe
contusion contrecoup injury.

SURGICAL PROCEDURES:
None.

COMPLICATIONS:
None.

HOSPITAL SUMMARY:
This 17 year old, right handed young female was admitted to the
ICU on 2/15/08 and closely observed.  She was followed with
multiple CT scans that showed eventual development of a left
temporal lobe contusion with a mild hemorrhagic component.  This
was managed conservatively with the use of low dose Mannitol and
3% sodium chloride as needed according to Dr. Struve's wishes.
The patient did well and was transferred out of the ICU on
2/21/08.  On 2/22/08 she was allowed to go home to the care of
her aunt.  An MRI scan had been completed prior to discharge
which showed that the contusion was limited to the temporal lobe.
The patient was also noted to have a right temporal bone fracture
of a linear type without extension into the base of the skull.
As a whole, the patient did well during her hospitalization with
no untoward complications.  She will be closely followed by me in
the office.

_____

ASHOK K. JAIN, M.D.

Exhibit B-3

SIMONIS,LILLIAN E          MR#:     395714    PT#: 1178917    PT:   I
DCT:  3/07/2008    TRN:  3/07/2008  CAW       PRT on:  3/07/2008  13:32:06
  T: 10:46          T: 13:19    Page   1        JAIN,ASHOK K M.D.
Authenticated by Ashok K. Jain  M.D. On 03/13/2008 11:53:49 AM

DATE OF ADMISSION:    02/18/2008
Job # 3295

HISTORY OF PRESENT ILLNESS:
This is a 17-year-old right-handed previously entirely healthy female
who was skateboarding down a hill.  She may have been doing about 20
MPH, when she fell off the skateboard and hit her head against the
concrete surface.  She was dazed and was brought to the ER by
ambulance system. A CT scan followed which revealed  the presence of a
right-sided temporal bone fracture minimally out of alignment.   Dr.
Fred Grabiel asked me to see the patient at this point regarding
further management because the patient was not entirely ready to go
home.   There were no intracranial abnormalities noted on her CT scan.
By the time I got to the ER, I found the patient to be retching and
vomiting and complaining of a headache.  Her symptoms seemed to be
quite a bit disproportionate to the CT findings.   Therefore, a repeat
CT scan  was done as I felt the first CT scan was done too early after
trauma and may not show real pathology.   The second CT scan was
completed at 2:45 p.m., which did show the presence of a developing
hemorrhagic contusion of the left temporal lobe, but no abnormality
was noted in the area of the fracture on the right side.   Because of
this, the patient was admitted for further observation and management
to the ICU as a moderately severe head injury.

PAST MEDICAL HISTORY:
Essentially noncontributory.  She has no history of alcohol or drug
use.

CURRENT MEDICATIONS:
She is on no medications.

REVIEW OF SYSTEMS:
Review of systems carried out with the family indicated no problems
with any of the body systems.  She has no chronic medical or surgical
disorders.

ALLERGIES:
She is not known to be allergic to anything.


PHYSICAL EXAMINATION:

VITAL SIGNS:    Blood pressure 125/85 mmHg, pulse about 64 per minute,
normal, respirations are unassisted and normal, she is afebrile.

HEENT:   Some abrasions of the right frontotemporal area.  No deep
lacerations are noted to be present.  Both pupils are equal and
reacting to light.  External ocular movements are full.  No evidence
of double vision is noted.  Examination of the cranial nerves carried
out at this point indicate to be all normal, though she has some
difficulty hearing because of fullness in her ears.  Her tympanic

membrane examination is not done due to lack of cooperation. The patient is constantly retching and vomiting. No localizing motor or sensory exam findings are present on examination. Plantars are downgoing.

CHEST:   Clinically clear. No rales or rhonchi present.

CARDIOVASCULAR:   Normal. No murmurs are noted.

ABDOMEN:   Soft and nontender. No masses. Liver and spleen not enlarged.

GENITALIA:   Normal external genitalia noted.

MUSCULOSKELETAL: System found to be intact. No evidence of any other bony fractures or long bone abnormalities noted.

NEUROLOGIC: As described above. She appears to be quite alert and fully awake, complaining of headache and nausea and vomiting. No localizing findings could be found.

IMPRESSION:
Closed head injury with developing left hemorrhagic temporal lobe contusion. Glasgow coma scale about 13 to 15 range. The patient is admitted to the ICU for observation and management. The patient's CT scan will be performed on the morning of 2/19/08.


ASHOK K. JAIN, M.D.


SIMONIS,LILLIAN E          MR#:    395714    PT#: 1178917    PT:  I
DCT:  2/19/2008     TRN:  2/19/2008  JH        PRT on:  2/19/2008  13:19:30
  T: 10:51            T: 12:58   Page   2        JAIN,ASHOK K M.D.
Authenticated by Ashok K. Jain  M.D. On 02/28/2008 11:14:56 AM

DATE OF ER VISIT:    02/18/2008 at 1105
Job # 2782

CHIEF COMPLAINT/HISTORY OF PRESENT ILLNESS:
The patient is a 17-year-old who is brought to us status post a
skateboard accident.  She was riding one of her relative's
skateboards.  She is not used to being on a skateboard.  She fell on
pavement.  She had a loss of consciousness and had repetitive speech,
was feared to be disoriented, and vomited.

PAST MEDICAL HISTORY:
None.

MEDICATIONS:
None.

ALLERGIES:
None.

PHYSICIAN:
None.

FAMILY HISTORY:
Negative for bleeding disorders or diabetes.

SOCIAL HISTORY:
She is single, a nonsmoker.

REVIEW OF SYSTEMS:
Cannot obtain this from the patient.  The patient is combative and a
little bit disoriented.  She does not want to be here.  She is asking
to leave.  The patient obviously has altered mentation and is not able
to make her own decisions.  Her uncle, who arrived with the patient,
is requesting that the patient not have lab work, IV or CT scan as the
patient is requesting the same; However, the patient is a minor and I
have explained to him that the patient is altered, that he is not the
guardian, and the patient must be treated to the standard of care
which would include the above mentioned.

PHYSICAL EXAMINATION:

VITAL SIGNS:   Temperature is 36.6, pulse 67, blood pressure 144/75,
respiratory rate is 18, pulse oximetry is 100% on room air.
GENERAL:  This is a well-developed female with an obvious abrasion and
soft swelling of the right temporal area.  The patient is actively
vomiting.  She is reacting to any manipulation or any touch in a
confused, combative-type manner.  She does not appear to have any
focal deficit in terms of motor strength.  Sensory examination is
incomplete due to the patient's inability to cooperate.

HEENT:   Her head shows abrasion and contusion to the right temple.
Pupils are equal, round, and reactive.  She appears to have full
extraocular movements.  There is no Battle's, raccoon's, or

SIMONIS,LILLIAN E         MR#:      395714    PT#: 1178917     PT:  I
DCT:  2/18/2008      TRN:  2/19/2008   JH          PRT on:  2/19/2008   15:02:37
· T: 16:00           T: 14:33    Page   1          GRABIEL,FRED M.D.
Emergency Room                                                      LNRRSLT

hemotympanum.   Oropharynx is clear.   Trachea is midline.

RIBS: The ribs palpate normally.

SPINE:   C, T, and LS spines palpate normally.

ABDOMEN: Soft and nontender.   No masses or organomegaly.

PELVIS:   Stable to compression and rock.

EXTREMITIES:   Without any deformity.   She is using all four of them equally.

EMERGENCY ROOM COURSE:
The patient is restrained for an IV start.

Labs are sent.

The patient is treated with IV Zofran x 2 and Ativan.   She has become more cooperative and is resting comfortably.

Meanwhile, CT scan of her head and of her C-spine have been performed and read by Dr. Stephens as being negative.

The patient obviously has a closed head injury.   CT is read as negative for intracerebral bleed, but she did have a temporal bone fracture.

For this reason, the patient is observed and I have discussed the case with Dr. Jain, who has come in to examine the patient.   The patient has been CT'd within an hour of the injury, therefore, there may be late findings.   We have discussed admitting the patient for observation and possible repeat CT.

The patient continued to vomit in the Emergency Department despite the medications and she still appeared to be confused, so a CT scan has been ordered and repeated.

The second CT did show a contrecoup intracerebral contusion with some significant blood, exactly straight across the opposite side from where her trauma had been.

The assessment of intracranial bleed is discussed with other family members that have arrived and with a lady who describes herself as her guardian.   Dr. Ashok Jain has kindly responded to the Emergency Room a second time now to admit her.

ASSESSMENT:
Blunt head trauma with intracranial bleed.

_____

MERCY MEDICAL CENTER
REDDING, CA 96001

Patient Name: SIMONIS, LILLIAN E                    Age: 17
         Date: 02/18/2008                    X-ray No:
  Examination: FOLLOW UP CT SCAN
       Doctor: FRED GRABIEL, M.D.
           CC:
                                           Job No: 2736
    Room No: ER                           Unit No: 395714
           DOB: 05/28/1990            Account No: 1178917

              REGIONAL RADIOLOGICAL ASSOCIATES, INC.


              ***  Electronic Signature  ***
                ***  Electronic Signatu
                 R S STEFFENS JR., M.D.


FOLLOW UP CT SCAN AT 1445 HOURS

HISTORY:
Trauma.

The patient has a known basilar skull fracture.
Unenhanced study from the base of the skull to the vertex,
intracranially, there is now evidence of an intracerebral
hematoma and edema in the left temporoparietal lobe with a
subacute hemorrhage.  This is a new finding compared to
the scan earlier.  The patient motion is apparent.  Some
edema of the left hemisphere is present.  There is a
slight midline shift of about 3-4 mm.

IMPRESSION:
Interval development of a left temporoparietal contusion
with parenchymal hemorrhage.  The overall size of the
adenomatous area is 4 cm from anterior to posterior, and 3
cm mediolateral.  The ER was called at the time of
dictation by Dr. Steffens.

D: 02/18/2008 15:19  T: 02/18/2008 15:56 RSS/ krb

MERCY MEDICAL CENTER
REDDING, CA 96001

Patient Name: SIMONIS, LILLIAN E                    Age: 17
          Date: 02/19/2008              X-ray No:
Examination: HEAD CT WITHOUT CONTRAST
      Doctor: ASHOK K JAIN, M.D.
          CC: FRED GRABIEL, M.D.
                                        Job No: 3269
     Room No: 2503 A                   Unit No: 395714
         DOB: 05/28/1990           Account No: 1178917

          REGIONAL RADIOLOGICAL ASSOCIATES, INC.


          ***  Electronic Signature  ***
           ***  Electronic Signatu
               SANDER SAIDMAN, M.D.


HEAD CT WITHOUT CONTRAST

Clinical History: Blunt head trauma with intracranial
bleed. Follow-up.

Technique: Spiral axial scans were obtained through the
head without intravenous contrast. The examination was
reviewed on a workstation.

Comparison is made to 02/18/08.

Findings: There is an area of punctate intracranial
hemorrhage in the left temporal lobe with some surrounding
edema. The area of hemorrhage and edema now measure
approximately 4.4 AP by 2.8 transverse cm in diameter.
Craniocaudal dimension is approximately 3.5 cm. I do not
believe any new hemorrhage is present. The area of edema
may have increased slightly in the interval. I do not see
any adjacent skull fracture or subdural hematoma. There is
very slight effacement of the left lateral ventricle, but
no significant midline shift is noted.

IMPRESSION:
Relatively stable area of hemorrhage and edema in the left
temporal lobe with some effacement of the left lateral
ventricle. Findings are not substantially changed since
02/18/08.

D: 02/19/2008 10:39  T: 02/19/2008 11:27 SS/ kh

MERCY MEDICAL CENTER
REDDING, CA 96001

Patient Name: SIMONIS, LILLIAN E                    Age: 17
         Date: 02/20/2008              X-ray No:
  Examination: MRI OF THE BRAIN
       Doctor: ASHOK K JAIN, M.D.
           CC: FRED GRABIEL, M.D.              Job No: 4631
     Room No: 2503 A                           Unit No: 395714
          DOB: 05/28/1990              Account No: 1178917


          REGIONAL RADIOLOGICAL ASSOCIATES, INC.

         ***   Electronic Signature   ***
           ***   Electronic Signatu
             ADAM A. ATTOUN, D.O.


MRI OF THE BRAIN:

HISTORY:  Head trauma.

TECHNIQUE:  T1 sagittal, T1, T2, proton density, diffusion
weighted and ADC map axial, and coronal FLAIR acquisitions
through the brain are performed.

FINDINGS:  The lateral ventricles are symmetrical and not
dilated.  There is an approximate 3.7 cm hemorrhagic
contusion within the left temporal lobe.  Associated
cytotoxic edema results in no appreciable midline shift.
What appears to represent a subarachnoid hemorrhage
accumulates along the anterior and posterior falx.
Minimal subdural versus subarachnoid hemorrhage is also
noted along the inferior left temporal lobe.  No further
parenchymal hemorrhagic contusions are apparent.  No
further regions of acute diffusion restriction are
identified.

There is T2 prolongation within the right mastoid air
cells and maxillary sinus.  The middle ear cavities
exhibit gross normal aeration.

IMPRESSION:
1)   The findings are compatible with a 3.7 cm hemorrhagic
     contusion of the left temporal lobe, with associated
     cytotoxic edema, as discussed above.  Mild midline
     shift is noted.  Continued monitoring recommended.
2)   Suggestion of subarachnoid hemorrhage along the falx
     and inferior left temporal lobe.
3)   Inflammatory changes of the right maxillary sinus and
     mastoid air cells.  A maxillary bone fracture may be
     difficult to exclude on the current study.
     Additionally, there may be a right temporal bone
     fracture.  Please refer to prior CT examinations for
     osseous detail.

MERCY MEDICAL CENTER
REDDING, CA 96001

Patient Name: SIMONIS, LILLIAN E                    Age: 17
        Date: 02/22/2008                    X-ray No:
Examination: CT BRAIN WITHOUT CONTRAST
     Doctor: STEVEN N. STRUVE, M.D.
         CC: FRED GRABIEL, M.D.

                                          Job No: 6206
    Room No: 7 A                         Unit No: 395714
        DOB: 05/28/1990              Account No: 1178917

        REGIONAL RADIOLOGICAL ASSOCIATES, INC.


        ***  Electronic Signature  ***
          ***  Electronic Signatu
             MARC GRIFFEY, M.D.


CT BRAIN WITHOUT CONTRAST:

History:  Blunt head trauma.

Procedure:  5 mm sections were made from the base of the
brain to the vertex.

Findings:  There is edema in the left temporal lobe with
some mixed areas of high density consistent with
hemorrhage.  The entire area of lucency measures about 4.8
cm in diameter.  It does not appear changed from 2/19/08.
Left-to-right shift is seen of several millimeters.

CONCLUSION:
Left hematoma associated with edema in the left temporal
lobe with mild left-to-right shift.  No significant change
from 2/19/08.


D: 02/22/2008 08:48  T: 02/22/2008 09:43 MG/ caw

04/29/08   TUE 10:37  FAX 5302419020         COURT STREET IMAGING                         @001

# Court Street Imaging

1755 Court Street, Redding, California, 96001
Tel. (530) 241-8633 Fax (530) 241-9020

NAME: SIMONIS, LILLIAN          SEX:  F       CASE#: 24669        DOB: 5/28/1990

DATE OF EXAM: 4/29/2008          REASON FOR EXAM: STATUS-POST TRAUMA

FACILITY NAME:                  FACILITY LOCATION: REDDING

ORDERING M.D.: JAIN             FAX #:

# CT SCAN OF THE HEAD WITHOUT CONTRAST

## TECHNIQUE:
Multiple axial images were taken through the head. No contrast was administered. A stat reading is requested without prior films for comparison, although several old reports are submitted from Mercy Medical Center dated February 2008.

## FINDINGS:
There is a hypodensity in the left temporal lobe, measuring 3.8 cm in greatest dimension. This does not appear to be exerting mass effect and there is no evidence of acute hemorrhage. Elsewhere, the gray/white differentiation is normal. There is no hydrocephalus. There is no midline shift.

The visualized portions of the brain stem and posterior fossa are unremarkable. Further review of the bone windows shows nondisplaced fractures involving the right temporal bone and a portion of the greater wing of the sphenoid. No adjacent hemorrhage or edema is seen.

## IMPRESSION:
1. Old left temporal lobe hemorrhagic contusion with the overall maximum diameter decreased when compared to 2/22/08 (4.8 cm previously, 3.8 cm currently).
2. Nondisplaced fracture of the right temporal bone with additional involvement of the greater wing of the sphenoid. This was also noted on an earlier exam from 2/18/08.

D: 4/29/2008
T: 4/29/2008

jr

THOMAS L. ATLAS, M.D.

PR 2 9 2008,

Pt. was seen at her own request.

Had a CT Scan done at Court St. imaging, this was available for my review.

Pt. states that she recently got roughed up by law enforcement authorities while she was sleeping in her own home when they entered the room & arrested her. She showed me the (L) arm bruising. (L) elbow scab & marks on both wrists due to tight hand cuffs.

I advised her that she looked quite good neuro. Wise & that the CT scan looked on considering what happened to her, it shows signs of craniam contusion at the (L) temporal area.

Pt & the aunt are advised to seek Psych. assessment & counseling from the school system.

AJ.

ASHOK K. JAIN, M.D.  2105 COURT STREET REDDING, CA

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Lilian Simonis, Hannah Moore, Laura Lovett

**(b)** County of Residence of First Listed Plaintiff   **Shasta**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pro Per/Pro Se P.O. box 993658 Redding, CA 96099
(530) 549 4461

### DEFENDANTS
Eric Magrini, Larry Fitch, Teresa Clemens, Pamela De Pui, Shasta County Real Party in Interest

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
*PERSONAL INJURY*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury

*PERSONAL INJURY*
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
*Habeas Corpus:*
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Federal Constitution
Brief description of cause:
violation of Federal Constitution, Fourth Amendment, Bivens action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 6,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE     DOCKET NUMBER

DATE     SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

2:09 cv 446    LKK CMK (PS)